**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/21/2020

|  |  |
|---|---|
| In re: | ) )  Chapter 11 |
|  | ) |
| ARENA ENERGY, LP, *et al.*,[1] | )  Case No. 20-34215 (MI) |
|  | ) |
|  | )  (Jointly Administered) |
| Debtors. | ) |
|  | )  **Re: Docket No. 32** |

**ORDER (I) SCHEDULING A**
**COMBINED DISCLOSURE STATEMENT**
**APPROVAL AND PLAN CONFIRMATION HEARING,**
**(II) CONDITIONALLY APPROVING THE DISCLOSURE**
**STATEMENT, (III) ESTABLISHING PLAN AND DISCLOSURE**
**STATEMENT OBJECTION AND REPLY DEADLINES AND RELATED**
**PROCEDURES, (IV) APPROVING THE SOLICITATION PROCEDURES,**
**(V) APPROVING THE COMBINED NOTICE, AND (VI) CONDITIONALLY**
**WAIVING THE REQUIREMENTS THAT THE U.S. TRUSTEE CONVENE A**
**MEETING OF CREDITORS AND THE DEBTORS FILE SCHEDULES AND SOFAS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing; (b) conditionally approving the Disclosure Statement; (c) establishing the Confirmation Objection Deadline and approving related procedures; (d) approving the Solicitation Procedures; (e) approving the form and manner of the Combined Notice; (f) conditionally (i) directing that the U.S. Trustee not convene a Creditors' Meeting under section 341(e) of the Bankruptcy Code, *provided* that the Plan is confirmed within 45 days of the Petition Date, and (ii) waiving the requirement that the Debtors file Statements and SOFAs, *provided* that the Plan is confirmed

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

within 45 days of the Petition Date; and (g) allowing the notice period for the Disclosure Statement and Combined Hearing to run simultaneously, each as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

## Approval of the Confirmation Schedule

1.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on September 25, 2020, at 10:00 a.m., prevailing Central Time.

2.      The Disclosure Statement is conditionally approved and its use in the Debtors' prepetition solicitation of acceptances of the Plan is approved.

3.      Any objections to the adequacy of the Disclosure Statement and confirmation of the Plan shall be filed on or before September 18, 2020, at 4:00 p.m., prevailing Central Time.

4.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before September 22, 2020, at 4:00 p.m., prevailing Central Time.

5.      Any objections to the Disclosure Statement or confirmation of the Plan must:

      a.      be in writing;

      b.      comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules;

      c.      state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity;

      d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

      e.      be filed with this Court with proof of service thereof.

6.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

### **Approval of the Solicitation Procedures and Related Notices**

7.      The form of the Combined Notice, substantially in the form attached hereto as **Exhibit 1**, the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and the Notice of Non-Voting Status and Opportunity to Opt Out, substantially in the form attached hereto as **Exhibit 3**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved.

8.      The Opt-Out Deadline is approved.

9.      The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in the *New York Times* and the *Houston Chronicle* within five business days following entry of this Order, or as soon as reasonably practicable thereafter; and to make reasonable payments required for such publication. The Publication Notice, together with the Combined Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

10.     The Voting Record Date and the Voting Deadline are approved.

11.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements under the Securities Act, and any exemptions from registration under Blue Sky requirements and are approved.

12.     The Ballots, substantially in the form attached hereto as **Exhibit 4A** and **Exhibit 4B**, are approved.

13.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are approved.

14.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims or Interests that are Unimpaired under, and conclusively presumed to accept, the Plan or Holders of Claims or Interests that are Impaired and do not receive or retain any property under, and conclusively presumed to reject, the Plan.

### Matters Involving the U.S. Trustee

15.     The U.S. Trustee need not and shall not convene a meeting of creditors or equity Holders pursuant to section 341(e) of the Bankruptcy Code unless the Plan is not confirmed on or before October 4, 2020, without prejudice to the Debtors' right to request further extension thereof.

16.     Cause exists to extend the time by which the Debtors must file the Schedules and SOFAs until October 4, 2020, without prejudice to the Debtors' rights to request further extensions thereof.

**Assumption and Assignment Procedures**

17.     The Assumption and Assignment Procedures (including the form of the Executory Contract and Unexpired Lease Notice), as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are ratified and approved.

18.     Service of the Executory Contract and Unexpired Lease Notice and the Combined Hearing Notice as set forth herein shall be deemed good and sufficient notice of, among other things, the proposed assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor of the 365 Contracts, the applicable Cure Costs related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

19.     Any objection to the proposed assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor of the applicable 365 Contract (including, for the avoidance of any doubt, any objection to an Acquired Debtor or the Plan Sponsor's ability to provide adequate assurance of future performance or the proposed Cure Costs), must (a) state in writing, with specificity, the legal and factual basis for such objection as well as what Cure Costs are required, if any, (b) include appropriate documentation in support thereof, and (c) be filed with the Court no later than the Contract Objection Deadline.

20.     Any time prior to the closing of the Effective Date, the Debtors are authorized, but not directed, to supplement the list of 365 Contracts on the Executory Contract and Unexpired Lease Notice or any exhibit thereto or any future notice with previously omitted 365 Contracts, remove a 365 Contract from the Executory Contract and Unexpired Lease Notice or any exhibit thereto or any future notice, or modify the previously stated Cure Cost associated with any 365 Contract.

21.     In the event that the Debtors supplement the Executory Contract and Unexpired Lease Notice or any exhibit thereto or modify the previously stated Cure Cost for a particular 365

Contract, the Debtors shall promptly serve a revised notice on each counterparty affected. Such counterparties shall file any objection with respect to the revised notice not later than seven (7) days after the date of filing and service of the revised notice.

22.     At the Combined Hearing, the Debtors will seek Court approval of the assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor, as applicable, of the Assumed Contracts and Leases. The inclusion of a 365 Contract in the Executory Contract or Unexpired Lease Notice will not: (a) obligate the Debtors to assume any 365 Contract listed thereon or obligate the Plan Sponsor to take assignment of such 365 Contract; or (b) constitute any admission or agreement of the Debtors that such 365 Contract is an Executory Contract or Unexpired Lease. The Debtors' assumption and assignment to the Plan Sponsor (or assumption by an Acquired Debtor) of any 365 Contract is subject to consummation of the Plan. In the event the consummation of the Plan does not occur, no Executory Contract or Unexpired Lease (including any 365 Contract) or leases will be deemed assumed or assigned and all contracts and leases shall, in all respects, remain subject to further administration under the Bankruptcy Code.

23.     If a counterparty to a 365 Contract does not timely file and serve an objection that is consistent with the requirements set forth above by the Contract Objection Deadline, (a) such counterparty will be deemed to have consented to the assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor, as applicable, of such 365 Contract to the Plan Sponsor, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in such 365 Contract, and will be forever barred from asserting any objection with regard to such assumption or assumption and assignment, as applicable, and/or Cure Costs set forth on the Executory Contract and Unexpired Lease Notice or any exhibit thereto, (b) any and all defaults under such 365 Contract and any and all pecuniary losses related thereto shall be

deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Cost set forth in the Executory Contract and Unexpired Lease Notice or any exhibit thereto for such 365 Contract, and (c) the Cure Cost set forth in the Executory Contract and Unexpired Lease Notice or any exhibit thereto for such 365 Contract shall be controlling, notwithstanding anything to the contrary in such 365 Contract, or any other related document, and such counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtors and their estates, an Acquired Debtor, or the Plan Sponsor, or the property of any of them, that existed prior to the entry of the order resolving the objections and the Confirmation Order.

24. To the extent that the parties are unable to consensually resolve any objection prior to the commencement of the Combined Hearing, including any dispute with respect to the Cure Cost (any such dispute, a "Cure Dispute") which must be raised no later than the Contract Objection Deadline, such objection will be adjudicated at the Combined Hearing or at such other date and time as may be fixed by this Court; *provided, however,* that if the objection relates solely to a Cure Dispute, the 365 Contract may be assumed by an Acquired Debtor or assumed and assigned to the Plan Sponsor, as applicable, at the Effective Date, with all rights with respect to any such Cure Dispute reserved pending the Court's adjudication of such Cure Dispute.

**Procedures for Asserting Assignment Objections and Rights Objections**

25. The procedures for asserting Assignment Objections and Rights Objections (as defined herein), as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are ratified and approved.

26. If any party objects to the assignment to (a) the Plan Sponsor of any applicable contracts that are not 365 Contracts or Encumbered Assets, then such party must file with the Court an objection that (a) states, in writing, with specificity, the basis for objecting to the assignment of

such applicable contract(s) or other assets, (b) identify the applicable contract(s), and (c) includes all supporting documentation or the Plan Sponsor of any applicable contracts that are not 365 Contracts or other Encumbered Assets, free and clear of all claims, encumbrances or liabilities other than assumed obligations and certain permitted encumbrances, then such party must file with the Court no later than the Confirmation Objection Deadline, an objection that (x) states, in writing, with specificity, the basis for objecting to the assignment of such applicable contract(s) or other assets, (y) identify the applicable contract(s), and (z) includes all supporting documentation.

27.    If any purported holder of a Preferential Purchase Right objects to the transfer of the Debtors' assets to the Plan Sponsor free and clear of any such Preferential Purchase Rights, then such holder must file with this Court no later than the Confirmation Objection Deadline, an objection that states, in writing (a) the assets subject to such Preferential Purchase Right(s), (b) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (c) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and including all supporting documentation (a "Rights Objection").

28.    If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth herein and the parties are unable to consensually resolve the dispute prior to the Combined Hearing, such objection will be heard by this Court at the Combined Hearing or such other date and time as may be fixed by this Court.

29.    Any person failing to timely file, as applicable, will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to, and under the Debtors' assets to be sold, assumed, and/or assigned in connection with the Plan, free and clear of all claims, encumbrances or liabilities other than the assumed obligations and certain permitted encumbrances, and from asserting any alleged Preferential

Purchase Rights with respect to the Plan, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of such right, title, and interest in, to, and under such Debtors' assets, free and clear of all claims, encumbrances or liabilities other than the assumed obligations and certain permitted encumbrances, regardless of whether such consent must be in writing.

30.     If any person files an Assignment Objection or Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party) at any time prior to the Combined Hearing. Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.

31.     Nothing in this Order or the Motion shall be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

## **Other Matters; Miscellaneous**

32.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

33.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

34.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

35.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

SIGNED 08/21/2020

Marvin Isgur
United States Bankruptcy Judge

**Exhibit 1**

**Proposed Combined Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARENA ENERGY, LP, *et al.*,[1] | ) Case No. 20-34215 (MI) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

### NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11 BANKRUPTCY CASES, (II) COMBINED HEARING ON THE DISCLOSURE STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN, AND RELATED MATTERS, AND (III) RELATED OBJECTION AND BRIEFING DEADLINES

**NOTICE IS HEREBY GIVEN** as follows:

On August 20, 2020 (the "Petition Date"), Arena Energy, LP and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Contemporaneously therewith, the Debtors filed the *Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (as may be amended, modified, or supplemented from time to time and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 13] (as amended, supplemented, or otherwise modified from time to time, including all exhibits and supplements thereto, the "Disclosure Statement")[2] pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. **Copies of the Plan and the Disclosure Statement: (a) are available on the Debtors' restructuring website, free of charge, at http://www.kccllc.net/Arena**; (b) may be obtained upon request of the Debtors' proposed counsel at the address specified below; (c) are on file with the Clerk of the Bankruptcy Court, 4th Floor,

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:30 a.m. to 5:00 p.m., prevailing Central Time; and (d) are available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov.

## Information Regarding the Plan and Disclosure Statement

**Voting Record Date**. The voting record date was **August 12, 2020**, which was the date for determining which Holders of Claims in Class 3 (RBL Facility Claims) and Class 4 (Term Loan Claims) were entitled to vote on the Plan.

**Objections to the Plan and Disclosure Statement**. Any objections (each, an "Objection") to the Plan and Disclosure Statement, or the proposed assumption of Executory Contracts and Unexpired Leases, must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest owned by such Entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such Objections; and (e) be filed on the Bankruptcy Court's docket no later than **September 18, 2020, at 4:00 p.m., prevailing Central Time**.

**UNLESS AN OBJECTION IS TIMELY FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## Key Terms of the Plan[3]

The Plan provides, among other things, that upon emergence:

- All outstanding and undisputed General Unsecured Claims against the Debtors will be paid in full in cash, Reinstated, or otherwise Unimpaired by the Plan and satisfied in the ordinary course of business;

- All Other Priority Claims and Other Secured Claims will be paid in full in cash, Reinstated, or receive such other treatment that renders such Claims unimpaired under the Bankruptcy Code;

- Each Holder of an Allowed RBL Facility Claim will receive its Pro Rata portion of: (a) the Plan Sponsor Cash Amount and (b) the RBL Contingent Value Rights;

---

[3]    This summary is qualified in its entirety by the terms of the Plan.  In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

- Each Holder of an Allowed Term Loan Claim shall receive its Pro Rata portion of the Term Loan Contingent Value Rights;

- Arena Energy, LP Interests, Arena Energy GP, LLC Interests, Arena Energy 2020 GP, LLC Interests, and Sagamore Hill Holdings, LP Interests shall be, at the election of the Plan Sponsor in its sole discretion, (a) canceled, released and extinguished or (b) otherwise treated as determined by the Plan Sponsor in its sole discretion, in either case without the Holders thereof receiving any distribution on account of such Interests;

- Section 510(b) Claims will be canceled, released, and extinguished, and will be of no further force or effect; and

- All Intercompany Claims and Interests shall be at the election of the Plan Sponsor in its sole discretion: (a) Reinstated; (b) compromised, distributed, contributed, set off, settled, canceled, released and/or extinguished, without any distribution on account of such Intercompany Claims or Interests; or (c) otherwise treated as determined by the Plan Sponsor in its sole discretion.

The following chart summarizes the treatment provided by the Plan to each Class of Claims against and Interests in the Debtors and indicates the voting status of each Class.

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery (%) |
|:---:|---|:---:|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 3 | RBL Facility Claims | Impaired | Entitled to Vote | 10.3%-19.9% |
| 4 | Term Loan Claims | Impaired | Entitled to Vote | Up to 2.3% |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 6 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Reject or Presumed to Accept) | 0% |
| 7 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Reject or Presumed to Accept) | 0% |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 9 | Arena Energy, LP Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 10 | Arena Energy GP, LLC Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery (%) |
|-------|-------------------|--------|---------------|------------------------------|
| 11 | Arena Energy 2020 GP, LLC Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 12 | Sagamore Hill Holdings, LP Interests | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions as set forth below. **All Holders of Claims or Interests will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the releases and discharge of all Claims and causes of actions against the Debtors and the Released Parties unless such Holders: (x) elect to opt out of the releases contained in Article IX of the Plan; or (y) timely object to the releases contained in Article IX.E of the Plan and such objection is not resolved before confirmation.**

### Relevant Definitions

"**Exculpated Party**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) each Consenting RBL Facility Lender; (c) the RBL Facility Agent; (d) the Plan Sponsor; (e) each Consenting Term Loan Lender; (f) the Term Loan Agent; and (g) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"**Released Parties**" means collectively, and in each case, in their respective capacities as such: (a) each Consenting RBL Facility Lender and any other Holders of RBL Facility Claims that vote to accept the Plan and do not opt out of the releases in the Plan; (b) the RBL Facility Agent; (c) the Plan Sponsor; (d) each Consenting Term Loan Lender and any other Holders of Term Loan Claims that vote to accept the Plan and do not opt out of the releases in the Plan; (e) the Term Loan Agent; (f) each current and former Affiliate of each Entity in clause (a) through (e); (g) with respect to each Entity in clause (a) through (f), each such Entity's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (h) each Debtor's current and former Affiliates, and each Debtor's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"**Releasing Parties**" means , collectively, and in each case in their respective capacities as such: (a) each Consenting RBL Facility Lender; (b) the RBL Facility Agent; (c) each Consenting Term Loan Lender; (d) the Term Loan Agent; (e) each Holder of Claims and Interests that votes to accept

4

the Plan; (f) each Holder of Claims or Interests that (i) abstains from voting on the Plan and who does not opt out of the releases in the Plan, (ii) votes to reject the Plan and who does not opt out of the releases in the Plan, or (iii) is presumed to accept or deemed to reject the Plan and who does not opt out of the releases in the Plan; (g) the Plan Sponsor; (h) each current and former Affiliate of each Entity in clause (a) through (g); (i) with respect to each Entity in clause (a) through (h), each such Entity's current and former Affiliates, and each such Entity's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (j) each Debtor's current and former Affiliates, and each Debtor's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

## RELEASES BY THE DEBTORS

**Notwithstanding anything contained in the Plan, the Confirmation Order, or the Plan Sponsor Agreement to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the RBL Facility, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to any of the foregoing or created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, or the Restructuring Transaction, or any other actions taken to effectuate the**

5

Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action (including, for each, Avoidance Actions), such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the releases herein; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (7) a bar to any of the Debtors asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

## RELEASES BY RELEASING PARTIES

Except as otherwise expressly set forth in the Plan, the Plan Sponsor Agreement, or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operations thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction,

6

the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Plan Sponsor Agreement, the Restructuring Stipulation, the Disclosure Statement, the Plan, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing or created or entered into in connection with the RSA, the Plan Sponsor Transaction, the Restructuring Stipulation, the Disclosure Statement, the Plan, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are:
(1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the Releasing Parties; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

## <u>RELEASE OF LIENS</u>

Except as otherwise specifically provided in the Plan, the Plan Sponsor Agreement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan (including the terms of the RBL Contingent Value Rights, the RBL Contingent Value Rights Memorandum, the Term Loan Contingent Value Rights, the Term Loan Contingent Value Rights Agreement, and the Term Loan Contingent Value Rights Memorandum), on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the Plan Sponsor Agreement, all mortgages, deeds of trust, Liens, pledges, or other

security interests against any property, assets, or interests of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Plan Sponsor (or the Acquired Debtor, as applicable) without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. Any Holder of a Secured Claim (including any applicable agents for such Holder) shall be authorized and directed to release any collateral or property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and any applicable agents), and to take such actions as may be reasonably requested by the Debtors or the Plan Sponsor to evidence the release of such Lien, including the execution, delivery and filing or recordation of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. In addition, the RBL Facility Agent and the Term Loan Agent shall execute and deliver all documents reasonably requested by the Debtors, the Plan Administrator or the Plan Sponsor to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

## EXCULPATION

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby released and exculpated from any Claims or Cause of Action for, any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions (including the RBL Facility), the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Stipulation, the Plan Sponsor Transaction and any actions taken to effectuate the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property, assets, and interest under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time

for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## INJUNCTION

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or interest in property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or interest in property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.G of the Plan.**

## Plan Sponsor Transaction

As described in greater detail in the Disclosure Statement, the primary purpose of the Plan is to implement a transaction, pursuant to which San Juan Offshore, LLC (the "<u>Plan Sponsor</u>") (or a designee thereof) shall acquire the business enterprise of the Debtors, including substantially the the assets of the Debtors, in exchange for the consideration to be distributed to the Estates of the Debtors under the Plan (the "<u>Plan Sponsor Transaction</u>"). Pursuant to the Plan Sponsor Agreement, the sale of the assets to the Plan Sponsor shall be **<u>free and clear of all claims, encumbrances or liabilities</u>** other than the Assumed Liabilities and permitted encumbrances in

accordance with section 363(f) of the Bankruptcy Code. Any party or Entity who fails to timely file an Objection on or before the Confirmation Objection Deadline in accordance with the procedures above will be forever barred from asserting any Objection to the Plan or Plan Sponsor Transaction, including with respect to the transfer of the transferred assets of the Debtors **free and clear of all claims, encumbrances or liabilities** other than the Assumed Liabilities and permitted encumbrances.

### Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement

The hearing to consider the adequacy of the Disclosure Statement, any objections thereto, confirmation of the Plan, any objections thereto, any objections to the proposed assumption of Executory Contracts and Unexpired Leases, and any other matter that may properly come before the Bankruptcy Court (the "Combined Hearing") will be held before the Honorable Marvin Isgur, courtroom 404, of the United States Bankruptcy Court, Houston Division, 515 Rusk Street, Houston, Texas 77002, on **September 25, 2020, at [●]:[●] [a/p].m., prevailing Central Time**. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court.

### Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases not otherwise assumed, assumed and assigned, or rejected will be deemed assumed and assigned to the Plan Sponsor (or, if applicable, assumed by the Acquired Debtors), in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the schedule of Rejected Contracts and Leases; **(2)** have previously expired or terminated pursuant to their own terms; (3) have been previously assumed, assumed and assigned, or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date. Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each Assumed Contract and Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. The RSA, the Restructuring Stipulation, and the Plan Sponsor Agreement (including the Term Loan Contingent Value Rights Agreement), shall be deemed assumed by the Debtors upon entry of the Confirmation Order.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the schedule of Assumed Contract and Leases, or the schedule of Rejected Contracts and Leases, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in the Plan, assumptions, assumptions and

10

assignments or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Assumed Contract and Lease shall re-vest in and be fully enforceable by the Plan Sponsor (or, if applicable, the Acquired Debtors), except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume or assume and assign Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Plan Sponsor.

To the maximum extent permitted by law, to the extent any provision in any Assumed Contract or Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Assumed Contract or Lease (including any "change of control" provision or payment), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Assumed Contract or Lease or to exercise any other default-related rights (or demands for payment) with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors (at the direction of the Plan Sponsor) and the Plan Sponsor shall reserve the right to alter, amend, modify, or supplement the schedule of Assumed Contracts and Leases and the schedule of Rejected Contracts and Leases at any time up to forty-five (45) days after the Effective Date.

## NOTICE TO HOLDERS OF CERTAIN CONTRACTS AND LEASES

THE PLAN SPONSOR AGREEMENT CONTEMPLATES THE ASSIGNMENT TO THE PLAN SPONSOR OF CERTAIN CONTRACTS AND LEASES THAT ARE NOT EXECUTORY CONTRACTS OR UNEXPIRED LEASES (EACH, AN "ASSIGNED CONTRACT"). IF ANY PARTY OBJECTS TO SUCH AN ASSIGNMENT, INCLUDING ANY OBJECTION BASED ON ANY ALLEGED APPROVAL OR CONSENT RIGHT OR ANTI-ASSIGNMENT PROVISION CONTAINED IN OR APPLICABLE TO ANY ASSIGNED CONTRACT OR PURCHASED RIGHT OF WAY, THEN SUCH PARTY MUST FILE WITH THE COURT, NO LATER THAN THE CONFIRMATION OBJECTION DEADLINE, AN OBJECTION IDENTIFYING (A) ANY ASSIGNED CONTRACT, (B) THE BASIS FOR OBJECTING TO THE ASSIGNMENT OF SUCH ASSIGNED CONTRACT OR OTHER ASSETS, AND (C) ALL SUPPORTING DOCUMENTATION (EACH, AN "ASSIGNMENT OBJECTION").

ANY PERSON FAILING TO TIMELY FILE AN ASSIGNMENT OBJECTION WILL BE (A) FOREVER BARRED FROM OBJECTING TO THE TRANSFER, SALE, ASSUMPTION, AND/OR ASSIGNMENT OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE ASSETS TO BE SOLD, ASSUMED, AND/OR ASSIGNED IN CONNECTION WITH THE PLAN, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES (OTHER THAN ASSUMED OBLIGATIONS AND CERTAIN PERMITTED ENCUMBRANCES TO THE EXTENT SET FORTH IN THE PLAN SPONSOR AGREEMENT), AND (B) DEEMED TO CONSENT TO AND APPROVE THE TRANSFER, SALE, AND ASSUMPTION AND/OR ASSIGNMENT OF THE COMPANY'S RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER SUCH ASSET, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND OTHER

INTERESTS (OTHER THAN ASSUMED OBLIGATIONS AND CERTAIN PERMITTED ENCUMBRANCES TO THE EXTENT SET FORTH IN THE PLAN SPONSOR AGREEMENT) AND REGARDLESS OF WHETHER SUCH CONSENT MUST BE IN WRITING. ON THE DATE HEREOF, THE DEBTORS WILL SEND THE COMBINED HEARING NOTICE TO ALL COUNTERPARTIES TO THE ASSIGNED CONTRACTS AND PURCHASED RIGHTS OF WAY, SETTING FORTH THE ASSIGNMENT OBJECTION PROCEDURES.

### NOTICE TO HOLDERS OF PURPORTED PREFERENTIAL PURCHASE RIGHTS

THE PLAN SPONSOR AGREEMENT PROVIDES THAT THE DEBTORS WILL TRANSFER THE ASSETS, INCLUDING ALL PURCHASED RIGHTS OF WAY, TO THE PLAN SPONSOR FREE AND CLEAR OF ANY PREFERENTIAL PURCHASE RIGHTS, RIGHTS OF FIRST REFUSAL, DRAG-ALONG RIGHTS, TAG-ALONG RIGHTS, AND OTHER SIMILAR RIGHTS, IF ANY, THAT ARE APPLICABLE TO THE TRANSFER OF THE ASSETS IN CONNECTION WITH THE PLAN (EACH, A "PREFERENTIAL PURCHASE RIGHT").

IF ANY PURPORTED HOLDER OF A PREFERENTIAL PURCHASE RIGHT OBJECTS TO SUCH TRANSFER, INCLUDING ON ACCOUNT OF ANY ALLEGED PREFERENTIAL PURCHASE RIGHT CONTAINED IN OR APPLICABLE TO ANY ASSIGNED CONTRACT OR PURCHASED RIGHT OF WAY, THEN SUCH HOLDER MUST FILE WITH THE COURT NO LATER THAN THE CONFIRMATION OBJECTION DEADLINE, AN OBJECTION IDENTIFYING (A) THE ASSETS SUBJECT TO SUCH PREFERENTIAL PURCHASE RIGHT(S), (B) THE APPLICABLE AGREEMENT, DOCUMENT, OR STATUTE GIVING RISE TO SUCH PREFERENTIAL PURCHASE RIGHT(S), AND (C) THE PORTION OF THE AGREEMENT, DOCUMENT OR STATUTE GIVING RISE TO SUCH PREFERENTIAL PURCHASE RIGHT(S), AND INCLUDING ALL SUPPORTING DOCUMENTATION (A "RIGHTS OBJECTION").

ANY PERSON FAILING TO TIMELY FILE A RIGHTS OBJECTION WILL BE FOREVER BARRED FROM ASSERTING ANY ALLEGED PREFERENTIAL PURCHASE RIGHTS WITH RESPECT TO THE PLAN. THE COMBINED HEARING NOTICE, WHICH WILL BE SENT TO ALL KNOWN CREDITORS AND CONTRACT COUNTERPARTIES AND PUBLISHED AS SET FORTH HEREIN, DISCLOSES THE RIGHTS OBJECTION PROCEDURES.

Houston, Texas
August 21, 2020

Respectfully Submitted,

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve Graham (TX Bar No. 24085340) | Brian Schartz, P.C. (TX Bar No. 24099361) |
| Veronica A. Polnick (TX Bar No. 24079148) | 609 Main Street |
| Victoria Argeroplos (TX Bar No. 24105799) | Houston, Texas 77002 |
| 1401 McKinney Street, Suite 1900 | Telephone: (713) 836-3600 |
| Houston, Texas 77010 | Facsimile: (713) 836-3601 |
| Telephone: (713) 752-4200 | Email: brian.schartz@kirkland.com |
| Facsimile: (713) 752-4221 | |
| Email: mcavenaugh@jw.com | -and- |
| ggraham@jw.com | |
| vpolnick@jw.com | Gregory F. Pesce (*pro hac vice* admission pending) |
| vargeroplos@jw.com | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| *Proposed Co-Counsel to the Debtors* | Telephone: (312) 862-2000 |
| *and Debtors in Possession* | Facsimile: (312) 862-2200 |
| | Email: gregory.pesce@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**Exhibit 2**

**Proposed Publication Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ARENA ENERGY, LP, *et al.*,[1] | ) | Case No. 20-34215 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN**

**TO:**     **ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN
INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

     **PLEASE TAKE NOTICE THAT** on August 20, 2020 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") the *Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 13] (as amended, supplemented, or otherwise modified from time to time, including all exhibits and supplements thereto, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at http://www.kccllc.net/Arena.[2]

     **PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, in Room 404 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on September 25, 2020, at [●]:[●], [a/p].m.,

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

prevailing Central Time, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court. Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement <u>must</u>: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity or individual; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court (contemporaneously with a proof of service) and served so as to be **actually received** no later than **September 18, 2020, at 4:00 p.m., prevailing Central Time**, by those parties who have a filed a notice of appearance in the Debtors' chapter 11 cases.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE COURT.**

<u>**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**</u>

<u>**ARTICLE IX**</u> **OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND** <u>**ARTICLE IX.E CONTAINS A THIRD-PARTY RELEASE**</u>**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

<u>**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**</u>

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

\*       \*       \*

**Exhibit 3**

**Proposed Notice of Non-Voting Status and Opt Out Form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARENA ENERGY, LP, *et al.*,[1] | ) | Case No. 20-34215 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS TO HOLDERS
OR POTENTIAL HOLDERS OF UNIMPAIRED CLAIMS
CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN
AND HOLDERS OR POTENTIAL HOLDERS OF IMPAIRED
CLAIMS AND INTERESTS CONCLUSIVELY PRESUMED TO
REJECT THE PLAN AND (II) OPPORTUNITY FOR HOLDERS OF
CLAIMS AND INTERESTS TO OPT OUT OF THE THIRD-PARTY RELEASES**

**PLEASE TAKE NOTICE THAT** on August 20, 2020 (the "Petition Date"), Arena Energy, LP and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") the *Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 13] (as amended, supplemented, or otherwise modified from time to time, including all exhibits and supplements thereto, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at http://www.kccllc.net/Arena.[2]

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim against or an Interest in the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, ***is <u>not</u> entitled to vote on the Plan***.    Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or a Holder of a Claim or Interest in a Class that is Impaired under the Plan and, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, is ***not*** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **<u>obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost</u>**, you should contact Kurtzman Carson Consultants LLC, the Debtors' solicitation agent in the chapter 11 cases (the "<u>Claims and Noticing Agent</u>"), by: (a) visiting the Debtors' restructuring website at <u>http://www.kccllc.net/Arena</u>; (b) writing to Arena Ballot Processing, c/o Kurtzman Carson Consultants LLC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (c) emailing <u>ArenaInfo@kccllc.com</u> and referencing "Arena" in the subject line; and/or (d) calling the Debtors' restructuring hotline at (866) 506-4002 (domestic toll free) or (781) 575-2094 (international).

All pleadings filed in the cases (a) may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of Texas, P.O. Box 61010, Houston, Texas 77208 and (b) will also be available through the Court's electronic case filing system at <u>https://www.txs.uscourts.gov/page/bankruptcy-court</u> using a PACER password (to obtain a PACER password, go to the PACER website at <u>http://pacer.psc.uscourts.gov</u>), or (c) on the website maintained by the Claims and Noticing Agent at <u>http://www.kccllc.net/Arena</u>.

**WHILE YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THE OPT-OUT FORM ATTACHED HERETO PROVIDES YOU WITH THE SEPARATE OPTION TO <u>NOT GRANT</u> THE VOLUNTARY RELEASE CONTAINED IN ARTICLE IX OF THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**<u>ARTICLE IX</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE IX.E</u> CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "<u>THIRD-PARTY RELEASE</u>"):**

**Except as otherwise expressly set forth in the Plan, the Plan Sponsor Agreement, or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operations thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any intercompany transactions between or**

2

among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Plan Sponsor Agreement, the Restructuring Stipulation, the Disclosure Statement, the Plan, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing or created or entered into in connection with the RSA, the Plan Sponsor Transaction, the Restructuring Stipulation, the Disclosure Statement, the Plan, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the Releasing Parties; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

Definitions Related to the Third-Party Release under the Plan:

"**Released Parties**" means, collectively, and in each case, n their respective capacities as such: (a) each Consenting RBL Facility Lender and any other Holders of RBL Facility Claims that vote to accept the Plan and do not opt out of the releases in the Plan; (b) the RBL Facility Agent; (c) the Plan Sponsor; (d) each Consenting Term Loan Lender and any other Holders of Term Loan Claims that vote to accept the Plan and do not opt out of the releases in the Plan; (e) the Term Loan Agent; (f) each current and former Affiliate of each Entity in clause (a) through (e); (g) with respect to each Entity in clause (a) through (f), each such Entity's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents,

advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (h) each Debtor's current and former Affiliates, and each Debtor's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"**Releasing Parties**" means, collectively, and in each case in their respective capacities as such: (a) each Consenting RBL Facility Lender; (b) the RBL Facility Agent; (c) each Consenting Term Loan Lender; (d) the Term Loan Agent; (e) each Holder of Claims and Interests that votes to accept the Plan; (f) each Holder of Claims or Interests that (i) abstains from voting on the Plan and who does not opt out of the releases in the Plan, (ii) votes to reject the Plan and who does not opt out of the releases in the Plan, or (iii) is presumed to accept or deemed to reject the Plan and who does not opt out of the releases in the Plan; (g) the Plan Sponsor; (h) each current and former Affiliate of each Entity in clause (a) through (g); (i) with respect to each Entity in clause (a) through (h), each such Entity's current and former Affiliates, and each such Entity's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (j) each Debtor's current and former Affiliates, and each Debtor's and each such Affiliate's current and former equity holders (direct and indirect), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

\* \* \*

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASES INCLUDED IN THE PLAN. IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE CLAIMS AND NOTICING AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.**

Houston, Texas
August 21, 2020

Respectfully Submitted,

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve Graham (TX Bar No. 24085340) | Brian Schartz, P.C. (TX Bar No. 24099361) |
| Veronica A. Polnick (TX Bar No. 24079148) | 609 Main Street |
| Victoria Argeroplos (TX Bar No. 24105799) | Houston, Texas 77002 |
| 1401 McKinney Street, Suite 1900 | Telephone:    (713) 836-3600 |
| Houston, Texas 77010 | Facsimile:    (713) 836-3601 |
| Telephone:    (713) 752-4200 | Email:    brian.schartz@kirkland.com |
| Facsimile:    (713) 752-4221 | |
| Email:    mcavenaugh@jw.com | -and- |
|          ggraham@jw.com | |
|          vpolnick@jw.com | Gregory F. Pesce (*pro hac vice* admission pending) |
|          vargeroplos@jw.com | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| *Proposed Co-Counsel to the Debtors* | Telephone:    (312) 862-2000 |
| *and Debtors in Possession* | Facsimile:    (312) 862-2200 |
| | Email:    gregory.pesce@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**OPTIONAL: RELEASE OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before September 18, 2020, at 4:00 p.m., prevailing Central Time (the "Opt-Out Deadline"), and such objection is not resolved before confirmation.

**If you believe you are a Holder of a Claim or Interest with respect to Arena Energy, LP or its Debtor affiliates and choose to opt out of the Third-Party Release set forth in Article IX.E of the Plan, you may submit your election to opt-out through one of the following methods: (i) completing, signing, and returning the Opt-Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to Arena Ballot Processing, c/o Kurtzman Carson Consultants LLC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, so that it is actually received by the Claims and Noticing Agent prior to the Opt-Out Deadline or (ii) by completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at http://www.kccllc.net/Arena.**

## Opt-Out Form

To ensure that your hard copy Opt-Out Form is counted, clearly sign and return your Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Arena Ballot Processing, c/o Kurtzman Carson Consultants LLC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245.

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT") BY THE OPT-OUT DEADLINE OF SEPTEMBER 18, 2020, AT 4:00 P.M. PREVAILING CENTRAL TIME. IF THE OPT-OUT FORM IS RECEIVED AFTER THE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.**        **Amount of Claim.**

The undersigned hereby certifies that, as of August 12, 2020 (the "Voting Record Date"), the undersigned was the Holder of either (a) Class 1 Other Priority Claims, (b) Class 2 Other Secured Claims, (c) Class 5 General Unsecured Claims, (d) Class 8 Section 510(b) Claims, (e) Class 9 Arena Energy, LP Interests, (f) Class 10 Arena Energy GP, LLC Interests, (g) Class 11 Arena Energy 2020 GP, LLC Interests, or (h) Class 12 Sagamore Hill Holdings, LP Interests in the following aggregate amount (insert amount in box below):

---

Class 1 Other Priority Claims Amount $ _____

OR

Class 2 Other Secured Claims Amount $ _____

OR

Class 5 General Unsecured Claims Amount $ _____

OR

Class 8 Section 510(b) Claims Amount $ _____

OR

Class 9 Arena Energy, LP Interests _____

OR

Class 10 Arena Energy GP, LLC Interests _____

OR

Class 11 Arena Energy 2020 GP, LLC Interests _____

---

| |
|---|
| OR |
| Class 12 Sagamore Hill Holdings, LP Interests _____ |

**Item 2**.        **Important information regarding the Third-Party Release.**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE IX.E OF THE PLAN, AS SET FORTH BELOW. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE IX.E OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐        **By checking this box, you elect to opt <u>out</u> of the Third-Party Releases.**

**Article IX.E of the Plan contains the following Third-Party Release:**

**Except as otherwise expressly set forth in the Plan, the Plan Sponsor Agreement, or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operations thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Plan Sponsor Agreement, the Restructuring Stipulation, the Disclosure Statement, the Plan, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing or created or entered into in connection with the RSA, the Plan Sponsor Transaction, the Restructuring Stipulation, the Disclosure Statement, the Plan, or the Restructuring Transaction, or any**

3

other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the Releasing Parties; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN "***RELEASED PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE, IN THEIR RESPECTIVE CAPACITIES AS SUCH: (A) EACH CONSENTING RBL FACILITY LENDER AND ANY OTHER HOLDERS OF RBL FACILITY CLAIMS THAT VOTE TO ACCEPT THE PLAN AND DO NOT OPT OUT OF THE RELEASES IN THE PLAN; (B) THE RBL FACILITY AGENT; (C) THE PLAN SPONSOR; (D) EACH CONSENTING TERM LOAN LENDER AND ANY OTHER HOLDERS OF TERM LOAN CLAIMS THAT VOTE TO ACCEPT THE PLAN AND DO NOT OPT OUT OF THE RELEASES IN THE PLAN; (E) THE TERM LOAN AGENT; (F) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (E); (G) WITH RESPECT TO EACH ENTITY IN CLAUSE (A) THROUGH (F), EACH SUCH ENTITY'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; AND (H) EACH DEBTOR'S CURRENT AND FORMER AFFILIATES, AND EACH DEBTOR'S AND EACH SUCH

AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.

UNDER THE PLAN "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR RESPECTIVE CAPACITIES AS SUCH: (A) EACH CONSENTING RBL FACILITY LENDER; (B) THE RBL FACILITY AGENT; (C) EACH CONSENTING TERM LOAN LENDER; (D) THE TERM LOAN AGENT; (E) EACH HOLDER OF CLAIMS AND INTERESTS THAT VOTES TO ACCEPT THE PLAN; (F) EACH HOLDER OF CLAIMS OR INTERESTS THAT (I) ABSTAINS FROM VOTING ON THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, (II) VOTES TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, OR (III) IS PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN; (G) THE PLAN SPONSOR; (H) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (G); (I) WITH RESPECT TO EACH ENTITY IN CLAUSE (A) THROUGH (H), EACH SUCH ENTITY'S CURRENT AND FORMER AFFILIATES, AND EACH SUCH ENTITY'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; AND (J) EACH DEBTOR'S CURRENT AND FORMER AFFILIATES, AND EACH DEBTOR'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.

<u>**USE OF E-BALLOT OPT-OUT FORM**</u>

**You may submit your Opt-Out Form by electronic, online transmission solely through the E-Balloting Portal found on the Debtors' case information website <u>http://www.kccllc.net/Arena</u> and following the directions set forth on the E-Balloting Portal regarding submitting your Opt-Out Form as described more fully below.**

1. **Please visit <u>http://www.kccllc.net/Arena</u>.**

2. **Click on the "E-Ballot" section of the Debtors' website.**

3. **Follow the directions to submit your Opt-Out Form. If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should <u>not</u> return a hard copy of your Opt-Out Form.**

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED OPT-OUT FORM:**

**UNIQUE E-BALLOT ID#_____**

**"E-BALLOTING" IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**OPT-OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**Item 3**.        **Certifications.**

By signing this paper Opt-Out Form, the undersigned certifies:

(a)   that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)   that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and Holders or Potential Holders of Impaired Claims or Interests Conclusively Presumed to Reject the Plan and (II) Opportunity for Holders of Claims and Interests to Opt Out of the Third-Party Releases* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

(c)   that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)   that no other Opt-Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA FIRST CLASS MAIL (OR IN THE REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER OR HAND DELIVERY TO:**

**Arena Ballot Processing**
**c/o Kurtzman Carson Consultants LLC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

\*       \*       \*

**Exhibit 4A**

**Class 3 RBL Facility Claims Ballot**

**BALLOT FOR VOTING ON THE DEBTORS' JOINT PREPACKAGED PLAN
OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**[1]

**CLASS 3 HOLDERS OF RBL FACILITY CLAIMS**

| | |
|---|---|
| **IMPORTANT NOTE**: | PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS CLASS 3 BALLOT (THE "BALLOT") AND THE DEBTORS' JOINT PREPACKAGED PLAN (AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION UPON THE EMERGENCE OF ARENA ENERGY, LP (THE "COMPANY") FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF. |
| **DEADLINE**: | THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT") PRIOR TO 12:00 P.M. (PREVAILING CENTRAL TIME) ON **AUGUST 28, 2020** (THE "VOTING DEADLINE"). |
| **QUESTIONS**: | If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Claims and Noticing Agent by emailing ArenaInfo@kccllc.com and reference "Arena" in the subject line, or by calling (866) 506-4002 (domestic toll free) or (781) 575-2094 (international). |

---

[1] The anticipated debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

**NOTICE**:

You have received this Ballot because the Company's books and records indicate that you are a Holder of an Allowed Claim[2] in Class 3 (a "Voting Class," and together with Class 4, the "Voting Classes") as of August 12, 2020 (the "Voting Record Date") and as set forth in Item 1 of this Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Class 3 RBL Facility Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately.

You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

**TRANSACTION BACKGROUND:**

The Company is soliciting votes to accept or reject the Plan from Holders of Class 3 RBL Facility Claims. The Company may file for protection under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") and seek to consummate the Restructuring Transactions through the chapter 11 bankruptcy process and the Plan. The Company will file the Plan and the related disclosure statement (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") with the Court on or shortly after the date of the filing of the chapter 11 cases. A copy of the Plan and the Disclosure Statement was transmitted with this Ballot. You should read the Plan and the Disclosure Statement carefully prior to voting on the Plan. If you have Claims in more than one Voting Class, you will receive a ballot for each Class in which you are entitled to vote. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in a Voting Class votes to accept the Plan. The Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Classes, among others.

**TREATMENT OF YOUR CLAIMS**:

Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Exhibit A**.

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

**VOTING — COMPLETE THIS SECTION**

| **ITEM 1**: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 3 RBL Facility Claims as set forth below. You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted. |
|---|---|
| | Please note that you are voting all of your Class 3 RBL Facility Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote in Class 3 will not be counted. If you indicate that you both accept and reject the Plan for the Class 3 RBL Facility Claims by checking both boxes below, your vote in Class 3 will not be counted. |
| | The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor. |
| | The Holder of the Class 3 RBL Facility Claims set forth below votes to (*please check one and only one box*): |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 3 | RBL Facility Claims | $_____ | ACCEPT (VOTE FOR) THE PLAN<br>REJECT (VOTE AGAINST) THE PLAN |

3

**ITEM 2**:
**OPTIONAL: OPT OUT OF RELEASE INFORMATION**

Article IX.E of the Plan provides for a third-party release (the "**Third-Party Release**"):

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN, THE PLAN SPONSOR AGREEMENT, OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH DEBTOR AND RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATIONS THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE PLAN SPONSOR TRANSACTION, THE RESTRUCTURING TRANSACTION, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RSA, THE PLAN SPONSOR AGREEMENT, THE RESTRUCTURING STIPULATION, THE DISCLOSURE STATEMENT, THE PLAN, THE RESTRUCTURING TRANSACTION, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING OR CREATED OR ENTERED INTO IN CONNECTION WITH THE RSA, THE PLAN SPONSOR TRANSACTION, THE RESTRUCTURING STIPULATION, THE DISCLOSURE STATEMENT, THE PLAN, OR THE RESTRUCTURING TRANSACTION, OR ANY OTHER ACTIONS TAKEN TO EFFECTUATE THE PLAN, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES OR OTHER PROPERTY PURSUANT TO THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, ANY DEFINITIVE DOCUMENT OR ANY OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION WITH RESPECT TO TODD STONE DIVORCE LITIGATION, TITLED IN THE MARRIAGE MATTER OF TODD AND JENNIFER STONE DC NO. 18-02-01705.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES OF HOLDERS OF CLAIMS AND INTERESTS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASES HEREIN ARE: (1) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (2) IN EXCHANGE FOR A SUBSTANTIAL CONTRIBUTION AND THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES THAT IS IMPORTANT TO THE SUCCESS OF THE PLAN; (3) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE RELEASING PARTIES; (4) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (5) FAIR, EQUITABLE AND REASONABLE; (6) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (7) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THE RELEASES HEREIN AGAINST ANY OF THE RELEASED PARTIES.

IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:

UNDER THE PLAN, "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR RESPECTIVE CAPACITIES AS SUCH: (A) EACH CONSENTING RBL FACILITY LENDER; (B) THE RBL FACILITY AGENT; (C) EACH CONSENTING TERM LOAN LENDER; (D) THE TERM LOAN AGENT; (E) EACH HOLDER OF CLAIMS AND INTERESTS THAT VOTES TO ACCEPT THE PLAN; (F) EACH HOLDER OF CLAIMS OR INTERESTS THAT (I) ABSTAINS FROM VOTING ON THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, (II) VOTES TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, OR (III) IS PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN; (G) THE PLAN SPONSOR; (H) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (G); (I) WITH RESPECT TO EACH ENTITY IN CLAUSE (A) THROUGH (H), EACH SUCH ENTITY'S CURRENT AND FORMER AFFILIATES, AND EACH SUCH ENTITY'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS,

DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; AND (J) EACH DEBTOR'S CURRENT AND FORMER AFFILIATES, AND EACH DEBTOR'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.

AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN, AS SET FORTH ABOVE. YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN ONLY IF YOU (A) CHECK THE BOX BELOW OR (B) **TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION**. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION. BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE IX.E OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

PLEASE TAKE NOTICE THAT IF YOU ARE PARTY TO THE RESTRUCTURING SUPPORT AND PLAN SPONSOR AGREEMENT, DATED AS OF AUGUST 19, 2020, YOU HAVE AGREED TO NOT OPT OUT OF THE RELEASES AND, ACCORDINGLY, YOU **SHOULD NOT** CHECK THE OPT OUT ELECTION.

### The Holder of the Class 3 RBL Facility Claims elects to:

| |
|---|
| **OPT OUT of the Third-Party Release** |

**ITEM 3:
CERTIFICATION,
BALLOT
COMPLETION,
AND DELIVERY
INSTRUCTIONS**

By signing this Ballot, the undersigned certifies to the Court and the Company:

(a)  that, as of the Voting Record Date, either: (i) the undersigned is the Holder of Class 3 RBL Facility Claims as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of Class 3 RBL Facility Claims in the Voting Class as set forth in Item 1;

(b)  that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  that the undersigned has cast the same vote with respect to all Class 3 RBL Facility Claims; and

(d)  that no other Ballots with respect to Class 3 RBL Facility Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 3 RBL Facility Claims, then any such earlier Ballots voting those Class 3 RBL Facility Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE.**

**YOU MAY SUBMIT YOUR BALLOT ELECTRONICALLY BY SCANNING A SIGNED COPY OF YOUR BALLOT AND E-MAILING YOUR SCANNED BALLOT TO THE FOLLOWING E-MAIL ADDRESS:**

**ArenaInfo@kccllc.com**

**PLEASE DIRECT ALL VOTING QUESTIONS TO THE CLAIMS AND NOTICING AGENT BY E-MAILING ARENAINFO@KCCLLC.COM AND REFERENCING "ARENA" IN THE SUBJECT LINE, OR CALLING (866) 506-4002 (DOMESTIC TOLL FREE) OR (781) 575-2094 (INTERNATIONAL).**

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release provisions:[3]

**Article IX.D:  Releases by the Debtors**

      **Notwithstanding anything contained in the Plan, the Confirmation Order, or the Plan Sponsor Agreement to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the RBL Facility, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to any of the foregoing or created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action (including, for each, Avoidance Actions), such parties shall remain Released Parties.**

      **Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

      **Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the**

---

[3] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the releases herein; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (7) a bar to any of the Debtors asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

## Article IX.E: Releases by Holders of Claims and Interests

Except as otherwise expressly set forth in the Plan, the Plan Sponsor Agreement, or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operations thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Plan Sponsor Agreement, the Restructuring Stipulation, the Disclosure Statement, the Plan, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing or created or entered into in connection with the RSA, the Plan Sponsor Transaction, the Restructuring Stipulation, the Disclosure Statement, the Plan, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute

the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the Releasing Parties; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

## Article IX.F: Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby released and exculpated from any Claims or Cause of Action for, any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions (including the RBL Facility), the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Stipulation, the Plan Sponsor Transaction and any actions taken to effectuate the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property, assets, and interest under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## Article IX.G: Injunction

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties):  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or interest in property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or interest in property of such Entities on account of or in

connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.G of the Plan.

**INSTRUCTIONS FOR COMPLETING THIS BALLOT**

1.  This Ballot contains voting options with respect to the Plan.

2.  To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (if applicable) via e-mail to ArenaInfo@kccllc.com, so that this Ballot is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline, **<u>12:00 p.m. (prevailing Central Time) on August 28, 2020</u>**.

3.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Company determines otherwise.

4.  To vote, you <u>MUST</u> deliver your completed Ballot (via e-mail) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above. The Voting Deadline is 12:00 p.m. (prevailing Central Time) on August 28, 2020.

5.  Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company determines otherwise. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6.  Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or e-mail attaching a scanned PDF copy of your executed Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7.  If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8.  You must vote all of your RBL Facility Claims in Class 3 either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple RBL Facility Claims in Class 3, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9.  This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. <u>SIGN AND DATE</u> your Ballot.[4] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature included on an e-mailed Ballot will be deemed immediately legally valid and effective.

12. If your Class 3 RBL Facility Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account or otherwise acting for which your Class 3 RBL Facility Claims are held. Each Ballot votes only your Class 3 RBL Facility Claims indicated on that Ballot. Accordingly, complete and return each Ballot you receive.

<b><u>PLEASE DELIVER YOUR BALLOT PROMPTLY</u></b><b>!</b>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING <u>ARENAINFO@KCCLLC.COM</u> AND REFERENCE "ARENA" IN THE SUBJECT LINE, OR BY CALLING (866) 506-4002 (DOMESTIC TOLL FREE) OR (781) 575-2094 (INTERNATIONAL).**

---

[4] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

**<u>Exhibit A</u>**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:[1]

| Class 3 | RBL Facility Claims | On the Effective Date, each Holder of an Allowed RBL Facility Claim shall receive, in full and final satisfaction of such Allowed RBL Facility Claim, its Pro Rata portion of (i) the Plan Sponsor Cash Amount and (ii) the RBL Contingent Value Rights. |
|---------|---------------------|---|

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[1] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

**<u>Exhibit 4B</u>**

**Class 4 Term Loan Claims Ballot**

**BALLOT FOR VOTING ON THE DEBTORS' JOINT PREPACKAGED PLAN
OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE[1]**

**CLASS 4 HOLDERS OF TERM LOAN CLAIMS**

| | |
|---|---|
| **IMPORTANT NOTE**: | PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS CLASS 4 BALLOT (THE "BALLOT") AND THE DEBTORS' JOINT PREPACKAGED PLAN (AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION UPON THE EMERGENCE OF ARENA ENERGY, LP (THE "COMPANY") FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF. |
| **DEADLINE**: | THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY KURTZMAN CARSON CONSULTANTS LLC (THE "CLAIMS AND NOTICING AGENT") PRIOR TO 12:00 P.M. (PREVAILING CENTRAL TIME) ON **AUGUST 28, 2020** (THE "VOTING DEADLINE"). |
| **QUESTIONS**: | If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Claims and Noticing Agent by emailing ArenaInfo@kccllc.com and reference "Arena" in the subject line, or by calling (866) 506-4002 (domestic toll free) or (781) 575-2094 (international). |

---

[1] The anticipated debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

**NOTICE:**      You have received this Ballot because the Company's books and records indicate that you are a Holder of an Allowed Claim[2] in Class 4 (a "<u>Voting Class</u>," and together with Class 3, the "<u>Voting Classes</u>") as of August 12, 2020 (the "<u>Voting Record Date</u>") and as set forth in Item 1 of this Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Class 4 Term Loan Claims.

     This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately.

     You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

**TRANSACTION BACKGROUND:**      The Company is soliciting votes to accept or reject the Plan from Holders of Class 4 Term Loan Claims. The Company may file for protection under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") and seek to consummate the Restructuring Transactions through the chapter 11 bankruptcy process and the Plan. The Company will file the Plan and the related disclosure statement (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>") with the Court on or shortly after the date of the filing of the chapter 11 cases. A copy of the Plan and the Disclosure Statement was transmitted with this Ballot. You should read the Plan and the Disclosure Statement carefully prior to voting on the Plan. If you have Claims in more than one Voting Class, you will receive a ballot for each Class in which you are entitled to vote. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in a Voting Class votes to accept the Plan. The Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Classes, among others.

**TREATMENT OF YOUR CLAIMS:**      Subject to the terms and conditions of the Plan, you will receive the treatment identified in **<u>Exhibit A</u>**.

     **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

**VOTING — COMPLETE THIS SECTION**

| **ITEM 1**: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 4 Term Loan Claims as set forth below. You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted.

Please note that you are voting all of your Class 4 Term Loan Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote in Class 4 will not be counted. If you indicate that you both accept and reject the Plan for the Class 4 Term Loan Claims by checking both boxes below, your vote in Class 4 will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The Holder of the Class 4 Term Loan Claims set forth below votes to (_please check one and only one box_): |
|---|---|

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 4 | Term Loan Claims | $_____ | ACCEPT (VOTE FOR) THE PLAN<br>REJECT (VOTE AGAINST) THE PLAN |

3

**ITEM 2**:
OPTIONAL: OPT
OUT OF RELEASE
INFORMATION

**Article IX.E of the Plan provides for a third-party release (the "Third-Party Release"):**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN, THE PLAN SPONSOR AGREEMENT, OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH DEBTOR AND RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATIONS THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR AND ANOTHER DEBTOR, THE CHAPTER 11 CASES, THE PLAN SPONSOR TRANSACTION, THE RESTRUCTURING TRANSACTION, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RSA, THE PLAN SPONSOR AGREEMENT, THE RESTRUCTURING STIPULATION, THE DISCLOSURE STATEMENT, THE PLAN, THE RESTRUCTURING TRANSACTION, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING OR CREATED OR ENTERED INTO IN CONNECTION WITH THE RSA, THE PLAN SPONSOR TRANSACTION, THE RESTRUCTURING STIPULATION, THE DISCLOSURE STATEMENT, THE PLAN, OR THE RESTRUCTURING TRANSACTION, OR ANY OTHER ACTIONS TAKEN TO EFFECTUATE THE PLAN, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES OR OTHER PROPERTY PURSUANT TO THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, ANY DEFINITIVE DOCUMENT OR ANY OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION WITH RESPECT TO TODD STONE DIVORCE LITIGATION, TITLED IN THE MARRIAGE MATTER OF TODD AND JENNIFER STONE DC NO. 18-02-01705.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES OF HOLDERS OF CLAIMS AND INTERESTS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASES HEREIN ARE: (1) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (2) IN EXCHANGE FOR A SUBSTANTIAL CONTRIBUTION AND THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES THAT IS IMPORTANT TO THE SUCCESS OF THE PLAN; (3) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE RELEASING PARTIES; (4) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (5) FAIR, EQUITABLE AND REASONABLE; (6) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (7) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THE RELEASES HEREIN AGAINST ANY OF THE RELEASED PARTIES.

IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:

UNDER THE PLAN, "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR RESPECTIVE CAPACITIES AS SUCH: (A) EACH CONSENTING RBL FACILITY LENDER; (B) THE RBL FACILITY AGENT; (C) EACH CONSENTING TERM LOAN LENDER; (D) THE TERM LOAN AGENT; (E) EACH HOLDER OF CLAIMS AND INTERESTS THAT VOTES TO ACCEPT THE PLAN; (F) EACH HOLDER OF CLAIMS OR INTERESTS THAT (I) ABSTAINS FROM VOTING ON THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, (II) VOTES TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN, OR (III) IS PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN AND WHO DOES NOT OPT OUT OF THE RELEASES IN THE PLAN; (G) THE PLAN SPONSOR; (H) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (G); (I) WITH RESPECT TO EACH ENTITY IN CLAUSE (A) THROUGH (H), EACH SUCH ENTITY'S CURRENT AND FORMER AFFILIATES, AND EACH SUCH ENTITY'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS,

DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH; AND (J) EACH DEBTOR'S CURRENT AND FORMER AFFILIATES, AND EACH DEBTOR'S AND EACH SUCH AFFILIATE'S CURRENT AND FORMER EQUITY HOLDERS (DIRECT AND INDIRECT), SUBSIDIARIES, OFFICERS, DIRECTORS, MANAGERS, PRINCIPALS, MEMBERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, PARTNERS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, EACH IN THEIR CAPACITY AS SUCH.

AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN, AS SET FORTH ABOVE. YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN <u>ONLY IF</u> YOU (A) CHECK THE BOX BELOW OR (B) **TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE IX.E OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION**. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION. BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE IX.E OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**<u>The Holder of the Class 4 Term Loan Claims elects to:</u>**

---

**<u>OPT OUT of the Third-Party Release</u>**

---

**ITEM 3:**
**CERTIFICATION,**
**BALLOT**
**COMPLETION,**
**AND DELIVERY**
**INSTRUCTIONS**

By signing this Ballot, the undersigned certifies to the Court and the Company:

(a) that, as of the Voting Record Date, either: (i) the undersigned is the Holder of Class 4 Term Loan Claims as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of Class 4 Term Loan Claims in the Voting Class as set forth in Item 1;

(b) that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all Class 4 Term Loan Claims; and

(d) that no other Ballots with respect to Class 4 Term Loan Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 4 Term Loan Claims, then any such earlier Ballots voting those Class 4 Term Loan Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
| --- |

| Name of Holder: | |
| --- | --- |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE.**

**YOU MAY SUBMIT YOUR BALLOT ELECTRONICALLY BY SCANNING A SIGNED COPY OF YOUR BALLOT AND E-MAILING YOUR SCANNED BALLOT TO THE FOLLOWING E-MAIL ADDRESS:**

**ArenaInfo@kccllc.com**

**PLEASE DIRECT ALL VOTING QUESTIONS TO THE CLAIMS AND NOTICING AGENT BY E-MAILING ARENAINFO@KCCLLC.COM AND REFERENCING "ARENA" IN THE SUBJECT LINE, OR CALLING (866) 506-4002 (DOMESTIC TOLL FREE) OR (781) 575-2094 (INTERNATIONAL).**

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release provisions:[3]

**Article IX.D: Releases by the Debtors**

Notwithstanding anything contained in the Plan, the Confirmation Order, or the Plan Sponsor Agreement to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the RBL Facility, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to any of the foregoing or created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Plan Sponsor Transaction, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action (including, for each, Avoidance Actions), such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the

---

[3] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

**Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the releases herein; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (7) a bar to any of the Debtors asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

<u>**Article IX.E: Releases by Holders of Claims and Interests**</u>

Except as otherwise expressly set forth in the Plan, the Plan Sponsor Agreement, or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operations thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the Plan Sponsor Transaction, the Restructuring Transaction, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Plan Sponsor Agreement, the Restructuring Stipulation, the Disclosure Statement, the Plan, the Restructuring Transaction, or any other contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing or created or entered into in connection with the RSA, the Plan Sponsor Transaction, the Restructuring Stipulation, the Disclosure Statement, the Plan, or the Restructuring Transaction, or any other actions taken to effectuate the Plan, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities or other property pursuant to the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any Claims or Causes of Action with respect to Todd Stone divorce litigation, titled In the Marriage Matter of Todd and Jennifer Stone DC No. 18-02-01705.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute

the Bankruptcy Court's finding that the releases herein are: (1) essential to the Confirmation of the Plan; (2) in exchange for a substantial contribution and the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (3) a good faith settlement and compromise of the Claims released by the Releasing Parties; (4) in the best interests of the Debtors and all Holders of Claims and Interests; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the releases herein against any of the Released Parties.

## Article IX.F: Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby released and exculpated from any Claims or Cause of Action for, any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions (including the RBL Facility), the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Stipulation, the Plan Sponsor Transaction and any actions taken to effectuate the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property, assets, and interest under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## Article IX.G: Injunction

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties):  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or interest in property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or interest in property of such Entities on account of or in

connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article IX.G of the Plan.

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  This Ballot contains voting options with respect to the Plan.

2.  To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (if applicable) via e-mail to ArenaInfo@kccllc.com, so that this Ballot is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline, **<u>12:00 p.m. (prevailing Central Time) on August 28, 2020</u>**.

3.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Company determines otherwise.

4.  To vote, you <u>MUST</u> deliver your completed Ballot (via e-mail) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above. The Voting Deadline is 12:00 p.m. (prevailing Central Time) on August 28, 2020.

5.  Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company determines otherwise. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6.  Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or e-mail attaching a scanned PDF copy of your executed Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7.  If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8.  You must vote all of your Term Loan Claims in Class 4 either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple Term Loan Claims in Class 4, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9.  This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. SIGN AND DATE your Ballot.[4] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature included on an e-mailed Ballot will be deemed immediately legally valid and effective.

12. If your Class 4 Term Loan Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Class 4 Term Loan Claims are held. Each Ballot votes only your Class 4 Term Loan Claims indicated on that Ballot. Accordingly, complete and return each Ballot you receive.

**PLEASE DELIVER YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING ARENAINFO@KCCLLC.COM AND REFERENCE "ARENA" IN THE SUBJECT LINE, OR BY CALLING (866) 506-4002 (DOMESTIC TOLL FREE) OR (781) 575-2094 (INTERNATIONAL).**

---

[4] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## **Exhibit A**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:[1]

| Class 4 | Term Loan Claims | On the Effective Date, each Holder of an Allowed Term Loan Claim shall receive, in full and final satisfaction of such Allowed Term Loan Claim, its Pro Rata portion of the Term Loan Contingent Value Rights. |
|---|---|---|

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[1] This summary is qualified in its entirety by the terms of the Plan. In the event of inconsistency or conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

Case 20-34215 Document 32-1 Filed in TXSB on 08/21/20 Page 94 of 82

**Exhibit 5**

**Executory Contract and Unexpired Lease Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARENA ENERGY, LP, *et al.*,[1] | ) | Case No. 20-34215 (MI) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**NOTICE TO CONTRACT AND LEASE COUNTERPARTIES**

**NOTICE IS HEREBY GIVEN** as follows:

On August 20, 2020 (the "<u>Petition Date</u>"), Arena Energy, LP and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"). Contemporaneously therewith, the Debtors filed the *Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 12] (as may be amended, modified, or supplemented from time to time and including all exhibits and supplements thereto, the "<u>Plan</u>") and the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 13] (as amended, supplemented, or otherwise modified from time to time, including all exhibits and supplements thereto, the "<u>Disclosure Statement</u>")[2] pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. **Copies of the Plan and the Disclosure Statement: (a) are available on the Debtors' restructuring website, free of charge, at http://www.kccllc.net/Arena**; (b) may be obtained upon request of the Debtors' proposed counsel at the address specified below; (c) are on file with the Clerk of the Bankruptcy Court, 4th Floor, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Arena Energy, LP (1436); Arena Energy 2020 GP, LLC (N/A); Arena Energy GP, LLC (7454); Arena Exploration, LLC (1947); Sagamore Hill Holdings, LP (8266); and Valiant Energy, L.L.C. (7184). The location of the debtors' service address is: 2103 Research Forest Drive, Suite 400, The Woodlands, Texas 77380.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

8:30 a.m. to 5:00 p.m., prevailing Central Time; and (d) are available for inspection for a fee on the Bankruptcy Court's website at www.txs.uscourts.gov.

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases not otherwise assumed, assumed and assigned, or rejected will be deemed assumed and assigned to the Plan Sponsor (or, if applicable, assumed by the Acquired Debtors), in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the schedule of Rejected Contracts and Leases; (**2**) have previously expired or terminated pursuant to their own terms; (3) have been previously assumed, assumed and assigned, or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date. Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each Assumed Contract and Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. The RSA, the Restructuring Stipulation, and the Plan Sponsor Agreement (including the Term Loan Contingent Value Rights Agreement), shall be deemed assumed by the Debtors upon entry of the Confirmation Order.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the schedule of Assumed Contract and Leases, or the schedule of Rejected Contracts and Leases, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in the Plan, assumptions, assumptions and assignments or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Assumed Contract and Lease shall re-vest in and be fully enforceable by the Plan Sponsor (or, if applicable, the Acquired Debtors), except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume or assume and assign Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Plan Sponsor.

To the maximum extent permitted by law, to the extent any provision in any Assumed Contract or Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Assumed Contract or Lease (including any "change of control" provision or payment), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Assumed Contract or Lease or to exercise any other default-related rights (or demands for payment) with respect thereto.   Notwithstanding anything to the contrary in the Plan, the Debtors (at the direction of the Plan Sponsor) and the Plan Sponsor shall reserve the right to alter, amend, modify, or supplement the schedule of Assumed Contracts and Leases and

2

the schedule of Rejected Contracts and Leases after the Effective Date, subject to the terms of the Plan.

You are receiving this notice because you are a party to a contract or lease with the Debtors that may be an Executory Contract or Unexpired Lease.[3] Your rights may be affected by the Plan. If you are a party to a contract or lease with the Debtors that may be an Executory Contract or Unexpired Lease, then your contract or lease might be assumed and assigned to the Plan Sponsor pursuant to the Plan. Any defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, solely by payment of the Cure Cost by the Plan Sponsor or by an agreed-upon waiver or discharge of the Cure Cost on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Debtors, the Plan Sponsor, and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

**YOUR STATUS AS A COUNTERPARTY TO AN EXECUTORY CONTRACT AND/OR AN UNEXPIRED LEASE DOES NOT IN AND OF ITSELF ENTITLE YOU TO VOTE ON THE PLAN.** Accordingly, this notice and the Confirmation Hearing Notice are being sent to you for informational purposes only.

The Debtors may assume or reject the Executory Contract(s) or Unexpired Lease(s) identified on Exhibit 5A attached hereto (each such Executory Contract or Unexpired Lease, a "365 Contract" and, collectively, the "365 Contracts") to which you are a counterparty.

The Debtors have conducted a review of their books and records and have determined that, to the extent the Debtors determine to assume or assume and assign your 365 Contract, the cure amount for unpaid monetary obligations under such 365 Contract is as set forth on Exhibit 5A attached hereto (the "Cure Cost"). The Cure Cost set forth on Exhibit 5A hereto supersedes any notification of cure amounts previously provided by the Debtors. If you object to the potential assumption or disagree with the proposed Cure Cost, you must file an objection with the Court no later than fourteen (14) days after the date of receipt of this notice (the "Cure Objection Deadline").

Any objection to the proposed assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor of the applicable 365 Contract (including, for the avoidance of any doubt, any objection to an Acquired Debtor or the Plan Sponsor's ability to provide adequate assurance of future performance or the proposed Cure Costs), must (a) state in writing, with specificity, the legal and factual basis for such objection as well as what Cure Costs are required, if any, (b) include appropriate documentation in support thereof, and (c) be filed with the Court no later than the Contract Objection Deadline.

Any time prior to the closing of the Effective Date, the Debtors are authorized, but not directed, to supplement the list of 365 Contracts on the Executory Contract and Unexpired Lease Notice or any exhibit thereto or any future notice with previously omitted 365 Contracts, remove

---

[3] This Notice is being sent to counterparties to Contracts and/or Leases. This Notice is <u>not</u> an admission by the Debtors that such contract or lease is executory or unexpired, or that the Debtors will, at any point, assume or assume and assign such Contract or Lease.

a 365 Contract from the Executory Contract and Unexpired Lease Notice or any exhibit thereto or any future notice, or modify the previously stated Cure Cost associated with any 365 Contract.

In the event that the Debtors supplement the Executory Contract and Unexpired Lease Notice or any exhibit thereto or modify the previously stated Cure Cost for a particular 365 Contract, the Debtors shall promptly serve a revised notice on each counterparty affected. Such counterparties shall file any objection with respect to the revised notice not later than seven (7) days after the date of filing and service of the revised notice.

At the Combined Hearing, the Debtors will seek Court approval of the assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor, as applicable, of the Assumed Contracts and Leases. The inclusion of a 365 Contract in the Executory Contract or Unexpired Lease Notice will not: (a) obligate the Debtors to assume any 365 Contract listed thereon or obligate the Plan Sponsor to take assignment of such 365 Contract; or (b) constitute any admission or agreement of the Debtors that such 365 Contract is an Executory Contract or Unexpired Lease. The Debtors' assumption and assignment to the Plan Sponsor (or assumption by an Acquired Debtor) of any 365 Contract is subject to consummation of the Plan. In the event the consummation of the Plan does not occur, no Executory Contract or Unexpired Lease (including any 365 Contract) or leases will be deemed assumed or assigned and all contracts and leases shall, in all respects, remain subject to further administration under the Bankruptcy Code.

If a counterparty to a 365 Contract does not timely file and serve an objection that is consistent with the requirements set forth above by the Contract Objection Deadline, (a) such counterparty will be deemed to have consented to the assumption by an Acquired Debtor or assumption and assignment to the Plan Sponsor, as applicable, of such 365 Contract to the Plan Sponsor, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in such 365 Contract, and will be forever barred from asserting any objection with regard to such assumption or assumption and assignment, as applicable, and/or Cure Costs set forth on the Executory Contract and Unexpired Lease Notice or any exhibit thereto, (b) any and all defaults under such 365 Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Cost set forth in the Executory Contract and Unexpired Lease Notice or any exhibit thereto for such 365 Contract, and (c) the Cure Cost set forth in the Executory Contract and Unexpired Lease Notice or any exhibit thereto for such 365 Contract shall be controlling, notwithstanding anything to the contrary in such 365 Contract, or any other related document, and such counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtors and their estates, an Acquired Debtor, or the Plan Sponsor, or the property of any of them, that existed prior to the entry of the order resolving the objections and the Confirmation Order.

To the extent that the parties are unable to consensually resolve any objection prior to the commencement of the Combined Hearing, including any dispute with respect to the Cure Cost (any such dispute, a "Cure Dispute") which must be raised no later than the Contract Objection Deadline, such objection will be adjudicated at the Combined Hearing or at such other date and time as may be fixed by this Court; *provided, however,* that if the objection relates solely to a Cure Dispute, the 365 Contract may be assumed by an Acquired Debtor or assumed and assigned to the

Plan Sponsor, as applicable, at the Effective Date, with all rights with respect to any such Cure Dispute reserved pending the Court's adjudication of such Cure Dispute.

**ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN, OR OTHERWISE, SHALL RESULT IN THE FULL SATISFACTION, COMPROMISE, SETTLEMENT, RELEASE, AND DISCHARGE OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME PRIOR TO THE EFFECTIVE DATE OF ASSUMPTION AND/OR ASSIGNMENT.**

**PLEASE REVIEW THE PLAN AND THE DISCLOSURE STATEMENT FOR DETAILS REGARDING THE ASSUMPTION, ASSUMPTION AND ASSIGNMENT, AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

**YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE PLAN'S TREATMENT OF YOUR CONTRACT OR LEASE.**

Houston, Texas
August 21, 2020

Respectfully Submitted,

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve Graham (TX Bar No. 24085340) | Brian Schartz, P.C. (TX Bar No. 24099361) |
| Veronica A. Polnick (TX Bar No. 24079148) | 609 Main Street |
| Victoria Argeroplos (TX Bar No. 24105799) | Houston, Texas 77002 |
| 1401 McKinney Street, Suite 1900 | Telephone:    (713) 836-3600 |
| Houston, Texas 77010 | Facsimile:    (713) 836-3601 |
| Telephone:    (713) 752-4200 | Email:    brian.schartz@kirkland.com |
| Facsimile:    (713) 752-4221 | |
| Email:    mcavenaugh@jw.com | -and- |
|         ggraham@jw.com | |
|         vpolnick@jw.com | Gregory F. Pesce (*pro hac vice* admission pending) |
|         vargeroplos@jw.com | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| *Proposed Co-Counsel to the Debtors* | Telephone:    (312) 862-2000 |
| *and Debtors in Possession* | Facsimile:    (312) 862-2200 |
| | Email:    gregory.pesce@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**Exhibit 5A**

**Schedule of 365 Contracts**

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure Cost |
|--------|--------------|--------------------------------------------|-----------|
|        |              |                                            |           |